123   19
138   560

123   19
171   49

</div>

## GILLESPIE TOOL CO. v. R. J. WILSON ET AL.

<div align="right">

123      19
26 SC ²291

</div>

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

<div align="right">

123      19
29 SC ¹619

123    19
41SC³316

</div>

Argued October 23, 1888—Decided November 5, 1888.

1. If a plaintiff in an action upon a contract, will invoke the aid of the equitable doctrine of substantial compliance, he must present a case disclosing no wilful omission or departure from the terms of the contract, otherwise the question of substantial compliance should not be submitted to the jury.

2. Where the case of a plaintiff suing for the contract price of drilling an oil or gas well showed that, though the well was of the contract depth,

yet part of it was of less than the contract diameter, without excuse therefor except to save the additional time and increased expense, it was not error to enter judgment of compulsory nonsuit.

3. The fact that the well when drilled to the contract depth developed neither gas nor oil, and, as a test of the territory, was as effective as if it had been drilled to the contract diameter, would not relieve the plaintiff from the responsibility of full performance.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 80 October Term 1888, Sup. Ct.; court below, No. 273 October Term 1885, C. P. No. 2.

On September 7, 1885, a summons in assumpsit was served in an action by the Gillespie Tool Company against R. J. Wilson and Geo. E. Tener, partners as Wilson & Tener. The affidavit of claim averred an indebtedness of defendants to the plaintiff in the sum of $6,353.50, less a credit of $1,855.20, with interest on the amount due from July 1, 1885, "being the amount due for work done and materials furnished in and about the drilling of a gas well, as per bill of items hereto annexed and made part hereof, which bill of items is a true copy as taken from plaintiff's books of original entry. Affiant further avers that the said work was done and materials furnished in pursuance and in fulfilment of a certain contract entered into between plaintiff and defendants on July 24, 1883, a true copy of which contract is hereto annexed and made part hereof; and that said well so contracted for has been fully completed in accordance with said contract or agreement."

The defence made by the affidavit of defence was non-performance of the contract referred to.

At the trial on December 6, 1887, the plaintiff proved an accepted proposition in writing dated July 24, 1883, to erect for the defendants upon the Risher farm a first class derrick, complete with rig-irons and connections, for $450, and to drill therewith a well "2000 feet deep, at the rate of $1.50 per foot, the hole to be eight inches in diameter, to shut off fresh water, providing the depth does not exceed 400 feet; after the fresh water is shut off, the hole is to be five and five eighths inches diameter, but if salt water is found, we are to draw the casing and ream the hole down to eight inches diameter, and shut off the salt water; for this reaming you are to pay us at the rate

of $1.50 per foot extra." Evidence was then introduced showing that a derrick was erected upon a designated location, drilling begun on October 2, 1883, and continued thereafter until November 3, 1883, when the bit broke in the hole, then between 700 and 800 feet deep. Further drilling was delayed by a resulting "fishing job" until April 4, 1884. Drilling was then resumed and continued to a depth of between 1500 and 1600 feet, when in July, 1884, the cable parted, leaving the entire string of tools in the well. All known methods were employed to recover the tools until November 3, 1884, when the well was abandoned. The plaintiff then shifted the derrick twelve feet from the abandoned well and on December 11, 1884, commenced drilling a new one.

On November 5, 1884, the plaintiff's bookkeeper had a conversation with defendant Wilson about the renewal of a note given by defendants to plaintiff, on account of work done on the well, and Wilson was then informed that the first well had been abandoned and that the derrick was about to be moved to begin a new one, and made no objections. When the renewal note matured in February, 1885, it was allowed to be protested for non-payment. Afterwards the following notice was served upon the plaintiff:

To THE GILLESPIE TOOL CO.:

You are hereby notified that you are now drilling a well upon our property, without either our authority or consent, and that we will not pay for the same. If you continue, you do so entirely at your own risk and expense, as the same will not be accepted or paid for by us. Your contract with us was to drill and complete the first hole only, and do it promptly, which you have failed to do. We will hold you liable for the failure, and ask you to refund the money advanced on account of the same. WILSON & TENER.

PITTSBURGH, February 16, 1885.

At the date of this notice, the second well had been drilled to the depth of about 800 feet, and was of the diameter required by the contract. The plaintiff proceeded, however, with the drilling and in June, 1885, the well was of the depth of 2204 feet. When at the depth of 1729 feet, however, a flow of salt water had been reached, to case off which the hole was reduced to admit of casing of four and one quarter inch size, reaching to the surface.

Statement of Facts.

J. M. Guffy, an experienced gas and oil producer, called:

By plaintiff's counsel: We propose to ask Mr. Guffy and other witnesses of similar practical experience in the same line the following question:

A test well is to be drilled for oil or gas in undeveloped territory to the depth of 2000 feet; an eight inch hole is drilled 940 feet deep, passing through the water veins usually found in the developed territory, and it is cased to that depth. From that point it is drilled five and five eighths inches in diameter until it has reach a depth of 1729 feet from the surface, when salt water veins such as are unusual in previously developed territory are struck, and continue to be struck until the well has been drilled to a depth of 1822 feet from the surface. It is then cased with four and one quarter inch casing from the surface down to the depth of 1822 feet, where the salt water veins have all been passed. Assuming these facts, state whether or not substantially the same results would be reached in testing territory for oil or gas, as if the hole had been drilled five and five eighths inches in diameter below the depth of 1822 feet?

Objected to as incompetent and irrelevant, and further that the question assumes facts not shown to exist in this case.

By the court: The offer is to prove substantially that the well is as good as if it had been bored out the required diameter. The question is not whether it will answer as well, but whether it is a substantial fulfilment of the contract. Objection sustained.[3]

Q. Assuming the facts above stated, state whether or not it would be good operating, in the drilling of a test well, to drill the remaining portion of the 2000 feet with a four inch bit or auger?

Objected to as before.

By the court: Objection sustained.[4]

Q. Assuming the above facts to be true, state whether or not in case of obtaining gas, the same could be practically used as well from a four inch hole as from a five and five eighths inch hole.

Objected to as incompetent and irrelevant.

By the court: Objection sustained.[5]

At the close of the plaintiff's testimony, on motion, the court directed the entry of a judgment of compulsory nonsuit, with leave, etc. ; eo die, motion, etc.

On March 3, 1888, the court, WHITE, J., filed the following opinion and decree :

The plaintiff claims substantial performance. In two particulars it was clearly not according to the plain terms of the contract. (1) The contract required the well to be reamed out to 8 inch diameter below salt water, so as to admit a casing of five and five eighths inch diameter in the clear. It required the well to be thus reamed out from 940 to 1820 feet. (2) At the bottom, for 180 or 200 feet, the well was only four or four and one fourth inches in diameter instead of five and five eighths inches.

It is not pretended that there was any serious obstacle or difficulty in completing the well strictly in accordance with the contract. Mr. Reese, the driller, and others, show that it would only have required more time and expense. It is also a patent fact, as well as proven by Mr. Guffy, that a four and one quarter inch well would not produce as much gas as a five and five eighths inch well. The plaintiff, however, replies that the defendants have no good ground of complaint: (1) Because the four and one fourth inch hole tested the territory as well as a five and five eighths inch hole would have done ; and (2) that reaming out the well to the depth of 1820 feet would only have subjected the defendants to further expense and further loss, as the experiment proved it was not gas territory.

Whatever weight these considerations may have in a compromise settlement between the parties, I think they are not sufficient to determine the legal questions involved. They do not prove substantial performance of contract; they simply amount to this :—true, the well is not according to our contract, but as the matter turned out you ought not to complain, because it tested the territory, and at a less expense to you than if we had completed it according to the contract. In opposition to this stands the contract, in plain, unmistakable terms. It says nothing about a test well. No doubt the defendants expected to get gas, and made their contract in view of it. The plaintiff agreed to sink a well of the definite, specific diameter and depth required. They could have done so, but did not. If

they wilfully neglected to do so, they have no legal claim upon defendants for their pay.

The plaintiff company also had notice of trouble which should have made it very careful to comply with the exact terms of the contract. The written notice of February 6, 1885, said: . . . . .

After this most emphatic notice the plaintiff proceeded at its peril. After completing a well admittedly not in conformity with the contract, it can hardly say, " Well, this proves there was no gas there, therefore pay for it."

Motion to take off nonsuit refused.

The plaintiff then took this writ and assigned as error:

1. The entry of the judgment of compulsory nonsuit.

2. The refusal to vacate said judgment.

3–5. The refusal of plaintiff's offers.[3 to 5]

*Mr. D. F. Patterson* (with him *Mr. T. D. Chantler*), for the plaintiff in error:

1. No one pretends that a party is bound to accept or pay for work unsuitable for the purpose intended, but when the work done is suitable, and the variations from the specifications are immaterial or slight, it is settled that it must be paid for, subject to such deductions from the contract price as may be reasonably necessary to enable the other party to have the work done strictly in conformity with the contract, if he so desire and it be possible to have it so done. If in this case, the results of drilling the well as it was drilled were substantially the same as if it had been drilled in strict accordance with the contract, that would be strong evidence of substantial performance: Tilton v. Miller, 66 Pa. 388. And if the work as done, was in the line of good operating; if it was a good job, adapted to the purpose in view, though not strictly according to the specifications, the plaintiff was entitled to recover, subject to a reasonable deduction, if any deduction could be reasonable under the circumstances. The well proved to be a useless venture, utterly useless for any purpose; it would have been precisely the same if it had been drilled strictly according to contract.

2. Proof of substantial performance sustains an averment of

performance: Preston v. Finney, 2 W. & S. 54; Hall v. Rupley, 10 Pa. 231. The question of substantial performance, under the facts and circumstances in evidence in this case, was for the jury and not for the court: Anderson v. Meislahn, 12 Daly (N. Y.) 149; Rose v. O'Reiley, 111 Mass. 57; Danville Bridge Co. v. Pomroy & Colony, 15 Pa. 151; Albert v. Frick, 1 Penny. 132; Ligget v. Smith, 3 W. 331; Truesdale v. Watts, 12 Pa. 73; Snodgrass v. Gavit, 28 Pa. 221; Miller v. Phillips, 31 Pa. 218; Wade v. Haycock, 25 Pa. 382; Woodward v. Fuller, 80 N. Y. 312; Phillips v. Gallant, 62 N. Y. 264; Nolan v. Whitney, 88 N. Y. 648; Johnson v. DePeysted, 50 N. Y. 666; Glacius v. Black, 50 N. Y. 153.

*Mr. John S. Ferguson*, for the defendants in error:

The doctrine of substantial performance is essentially an equitable one and the burden is undoubtedly upon him who invokes it to show a case which entitles him to its protection. " If there has been no wilful departure from the terms of the contract, or omission in essential points, and the laborer has honestly and faithfully performed the contract in all its material and substantial particulars, he will not be held to have forfeited his right to remuneration by reason of mere technical, inadvertent or unimportant omissions or defects:" Sinclair v. Talmadge, 35 Barb. 602. But if a man contracts for a well of a particular description, and the company with which he contracts deliberately, without his consent, sees fit to put down a well of a different description, why should the courts regard the case of the company as one of hardship? In this case there was a wilful departure by the plaintiff from the terms of the contract. That fact alone entitles the defendants to stand upon the letter of the bond.

OPINION, MR. JUSTICE STERRETT:

Plaintiff company neither proved nor offered to prove such facts as would have warranted the jury in finding substantial performance of the contract embodied in the written proposition submitted to and accepted by the defendants. In several particulars the work contracted for was not done according to the plain terms of the contract. Nearly one half of the well was not reamed out, as required, to an eight inch diameter so

as to admit 'five and five eighths inch casing in the clear. About 180 feet of the lower section of the well also was bored four or four and one quarter inches instead of five and five eighths inches in diameter. In neither of these particulars, nor in any other respect, was there any serious difficulty in the way of completing the work in strict accordance with the terms of the agreement. To have done so would have involved nothing more than additional time and increased expense. The fact was patent, as well as proved by undisputed evidence, that a four and one quarter inch well would not discharge as much gas as one five and five eighths inches in diameter. It is no answer to say that for the purpose of testing the territory a four and one quarter inch well was as good as a five and five eighths inch well; nor that reaming out the well to the width and depth required by the contract would have subjected defendants to additional expense without any corresponding benefit. That was their own affair. They contracted for the boring of a well of specified depth, dimensions, etc., and they had a right to insist on at least a substantial performance of the contract according to its terms. That was not done, and the court was clearly right in refusing to submit the case to the jury on evidence that would not have warranted them in finding substantial performance of the contract.

The equitable doctrine of substantial performance is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right to compensation may not be forfeited by reason of mere technical, inadvertent, or unimportant omissions or defects. It is incumbent on him who invokes its protection to present a case in which there has been no wilful omission or departure from the terms of his contract. If he fails to do so, the question of substantial performance should not be submitted to the jury.

The offers specified in the third, fourth and fifth assignments were rightly rejected. The proposed evidence was irrelevant and incompetent. There is nothing in the record that requires a reversal of the judgment.

Judgment affirmed.