# Harris *v.* Sharpless.

*Evidence—Contract—Prior conversations—Parol evidence.*

In an action upon a contract in writing, evidence of conversations held prior to the execution of the contract are inadmissible to change the terms of the contract.

*Contract—Performance—Question for jury.*

In an action on a contract for furnishing catalogue covers ornamented with lithographic work, it appeared that after the proof had been submitted defendant wrote to plaintiffs, "The print as now made will be satisfactory if the covers furnished will be equal to these in good effect." Plaintiffs acknowledged this letter, quoting in effect its terms and stating that they would proceed to print. When the covers were delivered, the defendant found that the plaintiffs had added their imprint. The trial judge left it to the jury to determine whether the difference between the proof and the finished work rendered the covers of appreciably less artistic virtue and attractiveness and usefulness for the purposes to which the defendant contemplated applying them. *Held*, that the charge was correct and that a verdict and judgment for plaintiffs should be sustained.

Argued Nov. 20, 1900. Appeal, No. 91, Oct. T., 1900, by defendant, from judgment of C. P. Chester Co., Oct. T., 1899, No. 35, on verdict for plaintiffs in case of George S. Harris & Sons v. P. M. Sharpless. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit on a contract for catalogue covers.

At the trial it appeared that the plaintiffs had contracted in writing to make and deliver 200,000 catalogue covers, ornamented with lithographic work, to be used for advertising purposes in the defendant's business of manufacturing cream separators. Defendant objected to pay for the covers when delivered because they differed from the proofs furnished to him, which he had approved, in the fact that the plaintiffs had added their imprint.

When the defendant was on the stand he was asked this question:

"Q. In the course of time this gentleman, the agent of the company, came? A. Yes. Q. What transpired between you? A. He came in and showed me—"

Mr. Reid: The order, the acceptance, and the price, all fixed

by letters written by these people, is a contract in writing. What took place between the agent and him should not be admissible.

The Court: I suppose Mr. Reid's position that when they submitted the proofs, and, according to Mr. Sharpless's letter, he said they were satisfactory, and if the finished work should be similar and equal in quality and character, he would be satisfied, that that is the contract.

Mr. Hayes : I want to show by Mr. Sharpless what it was to be, and why it was to be, the price, and why the price was agreed upon—why so much more price was paid in this case than ordinarily.

The Court : It would seem to me that what may have happened between these parties at a prior time cannot be material, in fact that here are letters which seem to lay down in writing just what would be done on the one hand and the other. Mr. Sharpless is to be satisfied if he is to receive work similar in effect and equal to the samples, or proofs. Is not that the test, whether or not the work here is as contracted for?

Mr. Hayes : Also leading up to that, we ought to be able to show that he paid here an extra price for these for the reason that he might be satisfied.

The Court: According to my view of the law at the time, he is entitled to insist on everything here that he might insist on as to particularity; in other words, he has a right to be as particular as any man could with respect to any contract. Every substantial or material matter is to be complied with that is of any materiality whatever. If they fail to any appreciable extent in any detail, he is not entitled to pay for them.

Mr. Hayes : The letters themselves refer to conversations and agreements between the parties. They repeat the fact of the conversations.

The Court: These letters constitute the contract, it seems to me.

Mr. Hayes : What we offer to show by this witness is, that when the agent came Mr. Sharpless made known to him the troubles which he had had with other people who had done a similar character of work for him, and that this man's agent said, " You do not get a job up to the standard and according to your ideas because you are not willing to pay enough money

for it." Mr. Sharpless said: "Well, I will pay whatever is necessary to do it, and I will insist that it shall be done according to my instructions and requirements." We offer to show that he agreed then and there to do it in that way, and Mr. Sharpless was to be the sole judge of what was necessary and proper, and was not to take the goods unless it was done in that way.

Mr. Reid: I object to that, because it was all fixed by the writings as to what was to be done on one side and the other; and the price was agreed upon, and to the price agreed upon there is no objection to that, as far as the affidavit of defense was concerned, or the letters.

The Court: Objection sustained. Exception. [1]

"Q. Did you or not in this case pay a very high price for the purpose of having the work entirely to your satisfaction?"

Mr. Reid: I object to that.

The Court: I do not think that is material, because he was furnished with a proof on which he passed. The objection is sustained. Exception. [2]

"Q. Did you, in making this bargain, agree to pay nearly fifty per cent more for these pictures—these catalogue covers—than what you had paid for similar ones before in order to have them satisfactory to you?"

Mr. Reid: That is objected to.

The Court: Objection sustained. Exception. [3]

Wm. M. Hayes: We also offer in evidence letter from Geo. S. Harris & Sons, per George W. Eyre, to P. M. Sharpless, dated April 28, 1898.

Mr. Reid: I object to that letter because I do not think it has any bearing on the issue framed here. The contract is embodied in the later letters.

Objection sustained. Exception. [4]

The letter offered was as follows:

"4/28/'98.

"P. M. Sharpless:

"Dear Sir: I beg to hand you herewith design of cover for your Farm Cream Separator catalogue on which I have made you a price of $4.50 per thousand for printing 200,000 copies in eight colors of same weight and quality of paper as your last catalogue, which I believe was printed in six colors. We have estimated to do this work in first-class style from sketch sub-

mitted subject to your approval of proof. There are to be eight colors on the face of the cover front and back, inside of the cover to be blank.

"If you only wish to order 100,000 copies, the price will be $5.75 per thousand. One hundred and fifty thousand we could make at a price between $4.50 and $5.75 per thousand. We would be willing to take your order for 200,000 covers and make two deliveries of same, 100,000 each delivery, say three or four months apart, the bills for same to date from each delivery. We are sure you will have no cause to regret placing your order with us, and we shall give you the very best quality of work that it is possible to turn out.

"The writer will be glad to call on you at any time you choose to make an appointment with him, and will be pleased to receive any criticisms you may have to make on sketch which is submitted herewith. Any alterations or corrections or change of color effect can be readily made. The colors have been worked up in a delicate manner so that you can have them strengthened to show deeper or stronger, if you prefer that style of a sketch.

"I am sorry to have missed you to-day, as I would have liked to have had an interview with you so that we could have talked over the design together, and perhaps suggestions could have been made that would still improve what we believe to be a very beautiful design.

"Hoping you will advise me at your convenience when I can see you again, at which time I shall make it a point to call, I am,

"Very respectfully,

"GEORGE W. EYRE,

for G. S. HARRIS & SONS."

The court instructed the jury in part as follows:

[On August 13, 1898, proofs of the catalogue covers were sent by the plaintiffs to the defendant. On the 22d of the same month, the defendant informed the plaintiffs, in substance —you will recall the language used by him in his letter of that date—that the work as submitted was satisfactory, and that he would be satisfied with the covers if they should be equal to the proofs in good effect. The next day, as I have it noted, Au-

643, (1901).]　　·· Charge of Court—Arguments.

gust 23d, the plaintiffs acknowledged the defendant's letter, and, as I recall it, repeated back to him in language expressing satisfaction with the proofs, and informed him that they would proceed with the work. Thus the plaintiffs undertook to furnish the defendant with catalogue covers like the proofs submitted, and equal to them in artistic effect and excellence.] [5]

[Aside from the presence of the imprint, is the lithograph on the covers, the finished work, inferior to the proofs ? That is the first question for you to pass upon.] [6]

[The imprint did not appear on the proofs. The finished work, therefore, does in this respect differ from the proofs; and if this difference renders the covers of appreciably less artistic virtue and attractiveness and usefulness for the purposes to which the defendant contemplated applying them, then the plaintiffs cannot recover."] [7]

[Did the presence of the imprint to any material extent diminish the effectiveness of the covers, their virtue and value as a high order of artistic work, their usefulness for the purposes to which this defendant intended to apply them as an artistic catalogue cover of a high order?] [8]

Verdict and judgment for plaintiffs for $954. Defendant appealed.

*Errors assigned* among others were (1–4) rulings on evidence, quoting the bill of exceptions. (5–8) Above instructions, quoting them.

*John G. Johnson* and *William M. Hayes,* with them *J. Carroll Hayes,* for appellant.—We respectfully submit that the testimony of defendant should have been admitted, to satisfy the jury what was the original contract.

Where prior oral negotiations are referred to in letters between the parties to a contract, parol evidence is admissible to show the full terms of the contract: Holt v. Pie, 120 Pa. 425; Selig v. Rehfuss, 195 Pa. 200; Nye v. Pittsburg Co., 2 Pa. Superior Ct. 384; Anderson v. National Surety Co., 196 Pa. 288; Harper v. Kean, 11 S. & R. 280; Chapin v. Dobson, 78 N. Y. 74; Beach v. Raritan, etc., R. R. Co., 37 N. Y. 457; Hogins v. Plympton, 11 Pick. 97; Schwab v. Ginkinger, 181 Pa. 8; Leggoe & Co. v. Mayer, 2 Pa. Superior Ct. 529.

The defendant and not the jury was to have the final approval of the work; and we respectfully submit that the court erred in permitting the jury to pass upon a question which, by the agreement of the parties, as shown even by the testimony that is now in, was to be the privilege of the defendant: Howard v. Smedley, 140 Pa. 81; Singerly v. Thayer, 108 Pa. 291; Adams Radiator & Boiler Works v. Schnader, 155 Pa. 394.

There is no waiver. No man can be bound by a waiver of his rights, unless it is made distinctly, and with full knowledge of the rights which he intends to waive: Diehl v. Adams County Mutual Ins. Co., 58 Pa. 443; Codding v. Wood, 112 Pa. 371; Case v. Cushman, 3 W. & S. 544; Doster v. Friedensville Zinc Co., 140 Pa. 147; Williamson v. McClure, 37 Pa. 408; Snyder v. Liebengood, 4 Pa. 305.

In every case of an entire contract, the plaintiff fails if he is not able to show complete performance of his contract: Hartman v. Meighan, 171 Pa. 46; Martin v. Schoenberger, 8 W. & S. 367.

The burden was upon the plaintiffs. They were bound to show complete performance before they could recover. Their own evidence shows they did not come up to this standard of proof, and so the verdict cannot stand: Martin v. Schoenberger, 8 W. & S. 367; Hartman v. Meighan, 171 Pa. 46; Gillespie Tool Co. v. Wilson, 123 Pa. 19.

*Alfred P. Reid*, for appellees.—This agreement, as to the standard of the finished work, superseded the prior understanding or agreement upon that question, if there was one. This agreement was based upon a valuable consideration. On the faith of it the plaintiffs printed the covers, which would otherwise not have been done, and which are of no value to any one except the defendant. The testimony, therefore, of prior conversations on this subject-matter was properly excluded.

Courts and juries are always the arbitrators of any disputed questions between litigants unless they have bound themselves to some other tribunal. That was not done here. Hence, the court was right in the submission of the question to the jury.

OPINION BY WILLIAM W. PORTER, J., January 22, 1901:
This controversy grows out of a contract by which the plain-

tiffs agreed to furnish to the defendant certain catalogue covers ornamented with lithographic work, to be used in the defendant's business. The correspondence between the parties was explicit as to number, price per thousand, size, etc. The pictorial design was to be submitted first as a sketch, and after approval of the sketch, then the plaintiffs were to submit a satisfactory proof. The preparatory work progressed up to the point where the proof was submitted to the defendant. He approved this proof and said in writing: " I have yours of the 13th and think the print as now made will be satisfactory, if the covers furnished will be equal to these in good effect." To this letter the plaintiffs replied on the next day: " We beg to acknowledge receipt of your favor of the 22nd inst., advising us that the proof of cover, as already submitted, will be entirely satisfactory, providing the finished work will be equal to same. We will, therefore, proceed with the printing of the order," etc.

The first three assignments of error presented by the appellant raise the objection that he was prevented from showing conversations held with the representative of the plaintiff firm before the writing of the letters, in which it was agreed that the work should be subject to the personal approval of the defendant, and that it must be done to his satisfaction. The evidence was rejected because the contract was in writing. This was a good ground for its rejection. But whether there were such conversations or not, when the negotiations of the parties had progressed to the point of the presentation and approval of the proof, that which had gone before was of little moment. The approval of the proof as is clearly shown by the correspondence, left but one obligation upon the plaintiffs, which was to finish the work equal to the proof " in good effect." In the defendant's letter of August 5, 1898, he asserts his right to have " the full privilege of final approval," and later in the same letter instructs the plaintiffs not to " print any until final approval." Thus, does it appear that the right of " final approval " (which the defendant desired to prove by oral testimony to be a part of his contract) was in fact proven by the writing admitted, but by the same writing is it shown that the " final approval " was to apply to the proofs submitted.

It is somewhat difficult to see on what ground the court be-

low refused admission of the letter of April 28, 1898, referred to in the fourth assignment of error. It had a bearing on the contract in its incipiency as direct as that of some of the other letters offered by the plaintiffs, but as the course of the trial drew the real issue down to the question, whether or not the finished work was equal to the proof submitted, we think that the appellant was not injured by the rejection of the evidence. The next question in the case. is, whether the court below rightly permitted the jury to pass upon the question, whether the finished work delivered was equal in good effect to the proofs submitted. The plaintiffs were bound, under the terms of the defendant's letter, to deliver a reproduction of the proof equal to it in good effect. They did furnish a reproduction, but added their imprint. The presence of an imprint upon artistic work may enhance its value, if the work comes from sources of recognized artistic merit. On the other hand, the imprint may be but an advertisement of the house furnishing the work. Its presence in some instances may not injuriously affect artistic appearance; in others, it may ruin the whole artistic effect. The introduction of the imprint was a change in the proof, but it may not have rendered the finished work inferior to the proof in good effect. To whom should such a question go? Considerable reflection has resulted in the conclusion that the learned trial judge wisely and judiciously submitted the question to the jury, in language whose import is well illustrated by this clause taken from the charge: "The imprint did not appear on the proofs. The finished work, therefore, does in this respect differ from the proofs; and if this difference renders the covers of appreciably less artistic virtue and attractiveness, and usefulness for the purposes to which the defendant contemplated applying them, then the plaintiffs cannot recover."

The defendant claims that he was to be sole arbiter of the question, whether the finished work was equal in good effect to the proofs submitted. There was no evidence in the case creating this right. If, therefore, by competent evidence a jury has been satisfied that the finished work was equal in good effect to the proof, their finding of the fact must satisfy both the court and the parties, whatever views they may hold in respect to the matter.

The foregoing discussion covers all of the questions properly raised by the several assignments.   Finding no reversible error, we affirm the judgment.

ORLADY, J., dissenting:

When the plaintiffs submitted to the defendant the proof of the catalogue cover design, and received his reply that "the print as now made will be satisfactory, if the covers furnished will be equal to these in good effect," they had the right to believe that the defendant had carefully examined and fully approved of the proof as it was at that time.   They now recover the full price for 200,000 covers, with the unauthorized addition of "Geo. S. Harris & Sons, N. Y." imprinted thereon. They admitted on the trial that "they are not the same" as the proof, and that they added to the accepted proof their own advertisement without giving the defendant an opportunity to accept or reject the changed design.   The sole object of this addition was to advertise themselves as lithographers at the expense of the plaintiff.   His object was to advertise "the Sharpless Cream Separator;" such the proof purported, and so the covers should have been printed.   For this he agreed to pay a higher rate so as to secure from these plaintiffs a special, exclusive and personal catalogue cover.   They surreptitiously added to the work for which they claim he should pay them their name and address with a sample of their work.   This was not embraced in the contract; as to this the minds of the parties never met.   Under authority of Gillespie Tool Co. v. Wilson, 123 Pa. 19, and Hartman v. Meighan, 171 Pa. 46, I think the contract was entire, and that the design was changed by plaintiffs for their own mercenary purposes, and that this ought to prevent a recovery.

W. D. PORTER, J., concurs.