# Caughey, Appellant, v. Parker.

*Contract—Entire contract—Failure of performance.*

Where oil drillers contract to drive an oil well through the fourth sand, the work to be paid for at a certain rate per foot, and the tools break before the well is through the fourth sand, and the iron presents an impenetrable barrier to further operations, and there is no evidence that the owner or anyone authorized by him had accepted an abandonment of the well with the tools lodged therein, the contractor cannot recover from the owner the contract price.

Argued April 14, 1904. Appeal, No. 92, April T., 1904, by plaintiff, from order of C. P. No. 1, Allegheny Co., March T., 1902, No. 565, refusing to take off nonsuit in case of C. P. Caughey and J. A. Bergman, trading as Caughey & Bergman, v. H. J. Parker. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit on a contract for drilling an oil well.

The court entered a compulsory nonsuit, which it subsequently refused to take off, BROWN, J., filing the following opinion :

This matter arises upon a motion to strike off the compulsory nonsuit in an action by Caughey & Bergman against H. J. Parker, to recover the contract price for drilling a test well for oil and gas. The well was drilled to the fourth sand, the depth required by the contract, at which point the tools became lodged, and the plaintiffs, unable to dislodge them, left them in the well. This was not a substantial performance of the contract and bars a recovery : Gillespie Tool Company v. Wilson, 123 Pa. 19. Conceding this to be the rule, the plaintiffs allege that Jack Foster, defendant's agent, accepted an abandonment of the well with the tools lodged in it. This allegation is irrelevant, because there is not a shadow of testimony that the defendant ever agreed to the abandonment, or authorized his agent to agree to it. True, the defendant, through his agent, contracted with the plaintiffs for the drilling, but that was the scope of the agent's authority. Without his principal's assent, he was powerless to waive substantial performance of the contract.

*Error assigned* was the order of the court.

*W. H. S. Thomson*, of *Thomson & Thomson*, for appellants.

*Walter P. Rainbow*, with him *John B. Chapman*, for appellee.

OPINION BY PORTER, J., October 17, 1904:

The testimony produced by the plaintiffs established that they had entered into a contract with the defendant, who acted in that matter by his agent Foster, to drill for him a well for the purpose of producing oil, the well to be drilled to the third sand, and if dry in the third, to go to the fourth sand, the plaintiffs to be paid for the work at the rate of sixty-five cents a foot. The well was dry in the third sand and the work was continued until the drill had passed through, or almost through, the fourth sand, when the tools were lost in the well and were by the plaintiffs suffered to remain there, thus filling the well up to a point above the fourth sand. The plaintiffs claimed that they were entitled to be paid the contract price, and for the recovery of the same brought this action. The court below entered a judgment of nonsuit which it subsequently refused to take off, which action is assigned for error.

The plaintiffs were certainly not entitled to recover upon the ground that the contract had been substantially performed, for under the terms of the contract as proved the defendant was entitled to have a well through the fourth sand, that is a well reasonably available as a well to that depth, and not a hole filled with scrap iron, presenting an impenetrable barrier to further operations, to a point above the fourth sand. The well it is true may have been dry in the fourth sand, but before the defendant could be required to pay he was entitled to have that for which his agent had bargained, one which gave him access to the fourth sand, and which if he desired to do so would have given him the opportunity which such a well ought to have afforded for drilling deeper. The defendant may have desired to torpedo the fourth sand, or he may have desired to carry the operation to a deeper stratum. The contract was entire and the defendant not having received what he was entitled to have under it, could not be called upon to pay upon the ground that the plaintiffs had performed: Gillespie Tool Co. v. Wil-

son, 123 Pa. 19. The plaintiffs however contend that the defendant is liable under the evidence, because Foster, his agent, accepted an abandonment of the well with the tools lodged there. There was evidence to the effect that Foster visited the well while it was being drilled in the fourth sand, and before leaving in the evening told the men that they had best run on until morning, and when he returned to the well in the morning he found that the tools had been lost in the hole. It is thus clear that the tools were lost in the hole before the plaintiffs had received instructions to stop drilling; the work was not completed when the tools were lost. The evidence upon which the plaintiffs found their allegation that Foster accepted the well established, if believed, that when Foster came to the well in the morning he inquired what had happened and was told the condition of affairs. Neil Caughey, a witness for the plaintiffs, testified as follows : " Q. Then what, if anything, was said by Mr. Foster?" " A. Well, we talked about the situation some among ourselves. Mr. Foster made the declaration—he said, ' Well, it don't matter a damn to me what you do. You can plug the hole with the tools in it, if you want to. If you do, it will take that much less sand. If you want to wait and see the contractor about taking them out you can do that.' " This certainly did not amount to an unqualified acceptance of the well in the condition in which it then was as a performance of the contract, although if the words had been used by a person having authority their meaning might have been a question for the jury. This conversation occurred on a Sunday morning, and the plaintiffs were notified the next day that Parker, the defendant, declined to accept the well or to permit them to plug it, and upon that day C. P. Caughey, one of the plaintiffs, visited Parker, who then insisted that the plaintiffs should take the tools from the well, and said that he wished to drill to the fifth sand. This was a prompt notice to the plaintiffs that Parker insisted upon performance according to the terms of the contract. The plaintiffs offered no evidence whatever tending to show authority in Foster to bind Parker. The only evidence that Foster had authority to bind Parker in making the original contract is that the latter insisted that the contract should be performed as made. The fact that an agent has authority to make a par-

ticular contract is no evidence that he has authority to waive the rights of his principal after the contract has been fully agreed upon. The evidence would have justified a finding that Foster had authority to bind his principal by the covenants of the original agreement, but there was no evidence whatever from which a jury ought to have been permitted to infer that he had any power to bind Parker by accepting as performance something which never had been agreed upon.

The judgment is affirmed.