# Cases

# THIRD DEPARTMENT

IN THE

# APPELLATE DIVISION,

## May, 1904.*

---

THE COMMERCIAL TRAVELERS' HOME ASSOCIATION OF AMERICA, a
Domestic Corporation, Respondent, v. CATHERINE E. MCNAMARA,
Appellant.

*Money raised by a voluntary association to further the building of a home under-
taken by a corporation for indigent members thereof — in whom the title is — trust
created — proper parties to an action to determine the title — parol evidence to
show the purpose for which the money was raised.*

An incorporated association was chartered for the purpose of erecting and main-
taining a home for indigent commercial travelers who might become members
of the association. It raised a large fund for this purpose, and, with a portion
thereof, purchased a tract of land as a site for its home. The balance of the
fund was subsequently squandered, rendering the consummation of the enter-
prise impossible.

While the success of the enterprise seemed probable, a number of ladies organ-
ized a "Ladies' Committee" for the purpose of raising funds for the associa-
tion for the completion and furnishing of the home. This committee obtained
from the proprietor of a newspaper the donation of an edition of such paper
to be designated as the "Woman's Edition." Notices were sent out soliciting
advertisements and purchases of the paper in which it was stated that the edi-
tion would be published "in the interest of the Commercial Travelers' Home
Association of America, the entire proceeds to be applied toward completing
the Home now in process of construction."

The newspaper enterprise resulted in a profit of upwards of $1,000. The associa-
tion did not aid in the prosecution of the newspaper enterprise nor did it per-
form any services or incur any liability on account of the fund realized
therefrom.

---

* The other cases of this term will be found in volume 94 App. Div.— [REP.

APP. DIV.—VOL. XCV.     1

*Held,* that if the moneys paid for advertisements in the newspaper and for pur-
chases thereof were regarded as donations by individuals, the legal title to
such moneys did not pass to the association, but was held in trust by the
"Ladies' Committee" for the purpose indicated in the announcement;

That, this purpose having failed, the association was not entitled to receive such
moneys, but that they belonged to the original donors thereof, and that the per-
son whom the "Ladies' Committee" had selected as manager of the enterprise
was the lawful custodian thereof;

That if the fund raised be regarded as a voluntary subscription by the "Ladies'
Committee" payment could not be enforced because of failure of the enter-
prise for which it was subscribed;

That, in an action by the association to determine the title to the fund, at least
the members of the "Ladies' Committee" were necessary parties;

That parol evidence was admissible to show the purpose for which the fund was
raised.

CHASE, J., dissented.

APPEAL by the defendant, Catherine E. McNamara, from a judg-
ment of the Supreme Court in favor of the plaintiff, entered in the
office of the clerk of the county of Broome on the 24th day of Octo-
ber, 1903, upon the decision of the court rendered after a trial at
the Broome Special Term.

*Edward K. Clark,* for the appellant.

*D. H. Carver, I. T. Deyo* and *C. H. Hitchcock* for the
respondent.

HOUGHTON, J.:

The plaintiff was chartered in 1892 for the purpose of erecting
and maintaining a home for indigent commercial travelers who might
become members of the association.

In various ways the committee of the plaintiff raised in money,
according to one witness, $200,000, and according to another
$100,000, and purchased a tract of land near the city of Bingham-
ton. In beautifying the grounds and building the foundation there
was expended approximately $30,000 of the fund. The balance of
either $70,000 or $170,000 has been lost either through peculation or
mismanagement of the committee. The membership has dwindled
and there remains in the treasury only about $3,000, and nothing has
been further done toward erection of the building nor with the
grounds except to fence them so they might be used for pasture
and to protect the foundation from the elements.

While the success of the enterprise seemed probable, and late in 1896, many ladies of the city of Binghamton formed themselves into a committee for the purpose of raising funds for the association. A scheme was devised whereby the editor and proprietor of one of the leading newspapers of the city of Binghamton donated an edition of his paper to the ladies to be designated as the "Woman's Edition." Notices were sent out soliciting advertisements and purchases of the paper at liberal figures, in which it was stated that the edition would be published "in the interest of the Commercial Travelers' Home Association of America, the entire proceeds to be applied toward completing the Home now in process of construction." The defendant was selected as manager of the enterprise and the moneys arising from advertisements and sales of the paper were paid to her, and she received, as the court finds, above expenses paid out, upwards of $1,000.

The plaintiff's building committee evidently lost the funds very rapidly, and shortly after the receipt of this money by the defendant it became apparent that the enterprise was a failure and that the home would not be built. There was conference amongst the ladies who had raised the money, in which it was discussed that the building of the home was probably abandoned and that the moneys should be given to some charitable institution within the city. At various times, beginning in 1899, some representative of the plaintiff demanded the money from the defendant, and she refused to pay to the plaintiff or its committee, making substantially the excuse that the enterprise of building the home had failed and that the moneys should go to some other object.

The trial court found that the moneys thus raised belonged to the plaintiff and directed judgment against the defendant therefor. In this we think the court was in error.

The most that can be said as to the attitude of the "Ladies Committee" is that it announced that if the public at large would advertise and purchase the paper, it would give the profits to the completion of the Commercial Travelers' Home. Standing alone, as a legal proposition, the committee declared its intention of making a gift. This did not pass to the plaintiff legal title to the moneys realized. If the moneys paid for advertisements and purchases of the paper be deemed donations by individuals, the committee would

doubtless hold the moneys in trust for the purpose indicated in the announcement. But the object of the donation has failed for the record conclusively shows that the mismanagement of the committee has rendered practically impossible the completion of the home. This being the case, the moneys belonged to the original donors. The law is not so absurd as to hold one to his subscription or promise to give to a charitable or public enterprise after the enterprise has been abandoned. If no condition be attached the law will imply that the enterprise must be existing when payment is demanded. The "Ladies Committee," and this defendant representing it, is bound by no stronger legal principle than would apply had they agreed in writing to pay a specific sum for the completion of the home.

The cases of *Presbyterian Church of Albany* v. *Cooper* (112 N. Y. 517) and *Keuka College* v. *Ray* (167 id. 96) have set at rest the various theories upon which voluntary subscriptions become binding on the promisor.

In the latter case GRAY, J., says: "I think the discussion is reduced simply to this, whether the agreement which is sought to be enforced, and which is a voluntary promise on the part of the defendant, expressly or impliedly, either imposes upon the promisee some obligation, which is assumed, or requests of the promisee the performance of services, which are to be performed upon the strength of the promise. If those conditions are met, then, within the rule of law, there is a consideration which will suffice to uphold the agreement, or the promise. In this peculiar class of agreements to pay money, those which are conditioned, merely, upon all subscriptions for a like purpose aggregating a certain amount by a certain day, are deemed to lack the legal consideration to make them enforceable. The doctrine, however, may be regarded as well established that, if money is promised to be paid upon the condition that the promisee will do some act, or perform certain services, then the latter, upon performance of the condition, may compel payment. Nor need a request to the promisee to perform the services be expressed in the instrument; it may be implied."

After the raising of the money the plaintiff rendered no services nor did it incur any liability on account of the fund. It did not even proceed in any manner with the erection of the building, nor

did the plaintiff through its officers or in any legal way aid in the scheme of obtaining the money.

But so far as appears the advertisers obtained the worth of their money in the size of the edition, and the purchasers of the papers acquiesced in the high price and paid it. The profits, therefore, belonged to the promoters of the scheme. Their announcement that they proposed to give those profits for the completion of the home did not vest title in the plaintiff. Nor does it help plaintiff's title to say that the money was obtained by false pretenses. The only ones who could complain of that are those who paid their money.

But parol evidence was admissible to show the purposes for which the fund was raised. (*Dodge* v. *Gardiner*, 31 N. Y. 244.) The evidence discloses that the purpose as disclosed in discussions of the committee was to buy furnishings for the home when completed, and according to the announcement in the printed circular it was "toward completing the Home now in process of construction." It would do violence to the situation disclosed to say that the intent was to contribute this comparatively small amount to the erection from its foundation of a building so pretentious as the one contemplated.

We are not unmindful of the fact that the money does not belong to this defendant. But she is its lawful custodian and is responsible for its payment to the rightful owners. By our conclusion the plaintiff is not the legal owner; but if there is anything to litigate with respect to the title of the fund, the members of the "Ladies Committee," at least, should be made parties to the action as is plead by the defendant's answer.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred, except CHASE, J., dissenting.

Judgment reversed on law and facts and new trial granted, with costs to appellant to abide event.