Graboyes, Appellant, *v.* Kapner.

Argued October 5, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Joseph Gross,* and with him *Alexander M. Hauptman,* for appellant.

*Edward Unterberger,* for appellee.

OPINION BY TREXLER, P. J., January 4, 1935:

On March 13, 1925, the parties entered into an agreement in writing for the sale of a theatre, the price fixed being the sum of $50,000. The agreement provided for an initial deposit of $1,000, an additional payment of $1,500 within fifteen days thereafter and final settlement by April 27, 1925. The first installment was paid and the second. It is in regard to the latter and the matters coincident with it that the dispute involved in this case arose, and the present suit is brought for the return of the moneys paid.

The plaintiff and his witnesses testified to an oral agreement entered into by the parties. The conversation is thus narrated by the plaintiff and his version is corroborated. "When I came into Mr. Kapner with Mr. Muchnick, Mr. Kapner said, 'I presume you have brought the additional deposit of the $1,500?' I said, 'No, on the contrary, I came here to get my first thousand back.' He says, 'Why? ...... I says, 'The place is not bringing in any $550, as you showed me the figures.' He says, 'How do you know?' I says, 'I have been there during the fifteen days from the first payment to the second, and I was there several nights and I don't see no income there; in spite of the nearly $500 or $550 or more than you told me.' He says, 'You don't know. Who knows better? I know better or you should know?' ...... He says, 'I will tell you what I will do with you: If you give me the deposit ...... I will give you a trial week, and during the trial, if it could not bring it in, you can get your $2,500 back, the thousand you gave me and the additional $1,500 you are going to give me tonight.' ...... I says to him, 'Well, if you will give me a trial and the trial will produce $550, I will go on with the deal, otherwise you will give me my money back.' So I gave him the check for $1,500 additional with the understanding to take a trial week, and if the trial week

will not prove $550 or more he should return me my $2,500 deposit.''

"Q. Why did you give Mr. Kapner the $1,500 second deposit after you had asked for your first deposit back? A. Because Mr. Kapner agreed to give me a trial week and if the trial week would not bring the amount of $550 he will return me the $2,500. Q. That is why you gave him the second deposit?''

There was additional testimony to the same effect, which we need not here set out. We have, therefore, here a demand on the part of the claimant for the return of the first one thousand dollars because of a promise made at the time the original agreement was entered into that the theatre would show receipts of $550 a week, and that if such were not the fact the original deposit would be returned. Of course, the collateral promise made when the sale took place was not binding upon the vendor. It should have been incorporated in the written agreement. When, however, the purchaser demurred when the time arrived for the payment of the second installment and the vendor admitted his obligation to return the deposit unless he could prove the truth of his assertion that the receipts of the theatre would produce $550 each week and stated that if the plaintiff would agree to a trial and such trial did not show receipts totalling said amount or over per week, he would return the two deposits, a different situation presents itself. There were two trial weeks. The one brought in $374 and the other one $190. Setting aside the question of fraud which apparently is not in the case it would seem that where two parties bargain for the transfer of a property, and are both under the impression that it has a certain productive value concerning which thereafter a doubt arises, that they should have the opportunity to readjust the matters even if such readjustment is made by word of mouth and not reduced to writing. There

must, however, be a consideration for such a bargain and therefore it was incumbent upon the plaintiff to show that there was. We think in the present case he has.

The original agreement provided, inter alia, as follows: "If Graboyes shall fail and refuse to comply with any of the terms and conditions of this agreement, then it is understood and agreed that any payments made on account of the purchase price up to the time of default shall be forfeited to Kapner, and it is further agreed that the damages sustained by Kapner by reason of such default are equal to the amount of payments so made." When the plaintiff, disappointed in the result of the receipts of the theatre, came to the defendant and asked him for the return of his first deposit and it was refused even if the plaintiff was in the wrong he could not in accordance to the agreement be required to pay any more of the installments. His liability by reason of his default in not coming up to the bargain was equal to the amount of payments so made. He, therefore, was induced to pay his second installment of $1,500 on the promises and representations made by the vendor. In doing this he was paying something which he could not have been forced to pay. There is no doubt that the plaintiff when he had his conversation with the vendor relative to the return of the first installment could have called the whole matter ended and no suit could have been successfully maintained against him for any future installment. As the matter then stood it would have been a question of policy with him whether, rather than suffer the loss of the amount already invested, he should commit himself to the doubtful experiment of taking the theatre when the receipts were at such a low ebb. If the corroborated narration of the plaintiff is to be believed there was moral obligation upon the part of the defendant to return the deposit, and

while that standing alone might not be a legal basis to maintain an action for the return of the money, we should not be slow to seize the opportunity, if supported by the facts, to prevent a forfeiture of the amounts paid. It is a well established principle of law that forfeitures are not favored by the courts. If we find there was a sufficient consideration that is the end of the matter. The parties to the written contract were sui juris and could make a new bargain. One thing is sure that the vendor by the new arrangement secured a benefit which he could not have obtained as a matter of legal right. This is the point of divergence between the view taken by the lower court and that which we have adopted. The lower court held that there was an entire absence of consideration for ' when the vendee paid the second installment, he did what he was obliged to do in any event. We think the contrary is shown, and the vendee did something which he was otherwise not bound to do: Weigand v. Standard Motor Co., 109 Pa. Superior Ct. 256, 167 A. 493; Mikos v. Kida, 314 Pa. 561, 172 A. 101. Furthermore the carrying out of the arrangements required action by both parties. The two "trial weeks" necessarily must have required the active participation by both parties or their agents. To ascertain the receipts of a theatre must have required some supervision, and expenditure of time and very likely some money to accomplish the purpose in view. The mutual acceptance of the new modification of the contract and the endeavor of both parties to carry it out was a sufficient consideration: Himeles v. Rose, 84 Pa. Superior Ct. 363; Gallagher v. Wood, 101 Pa. Superior Ct. 354; Alcorn Combustion Co. v. Kellogg Co., 311 Pa. 270, 166 A. 862.

The lower court when it entered judgment for the defendant took occasion to state that if it had not done so it would have nevertheless granted a new

trial to the defendant. In view of this utterance we enter the following judgment (Sloan v. Phila. & R. Rwy. Co., 235 Pa. 155, 83 A. 604):

The judgment for the defendant n. o. v. is reversed and the record is remitted with direction to the court below to enter such order or judgment (other than the one now reversed) as law and right require.