Carson Estate.

Argued April 20, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Wendell E. Warner,* with him *Ralph L. Lindenmuth* and *Shields, Clark, Brown & McCowan,* for appellant.

*Solomon Hagy,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 22, 1944:

These three appeals are from the decree of the court below dismissing exceptions to the adjudication upon the second account of the executors of Maria Louise Carson, deceased. In the adjudication of the *first* account of these fiduciaries, which was confirmed absolutely on January 31, 1933, the sum of $5,000, claimed by the Stony Brook Assembly, Inc., a religious and educational institution, was directed to be retained by the executors until the terms of the decedent's subscription to the institution, upon which this claim is based, were complied with. The balance of the estate was distributed, and the present accounting is for the sum so retained.

At the audit, this fund was claimed by the institution upon the grounds that the terms of the subscription had been complied with. The auditing judge awarded the fund to the institution and exceptions were filed by the life tenant, the testamentary trustee — Girard Trust Company—and the executors.

The pertinent facts of the dispute are these. Early in 1929 Stony Brook School, conducted by the Assembly,

embarked upon an ambitious program of construction and enlargment. The school was founded by Dr. John F. Carson, a Presbyterian minister, who was a brother-in-law of the decedent. As its plant consisted principally of wooden buildings originally used for summer religious assemblies, it was proposed to erect suitable permanent structures on the campus and, generally, to beautify and enlarge the educational facilities. This was to be accomplished by voluntary contributions and subscriptions, and a drive was inaugurated to raise $500,000. The campaign was conducted by the personnel of the school and the Assembly, and by a prominent firm of professional solicitors. Elaborate prospectuses were prepared and many dinners and functions were held to publicize the project. In the prospectuses the objects of the drive were stated to be as follows: "1.—$300,000 To *erect* the *John F. Carson Memorial Hall,* to include a combined auditorium and adequate gymnasium, a swimming pool, extra dormitory space, laboratories and administrative offices; 2.—$40,000 To build a separate infirmary; 3.— $25,000 For gymnasium, library and laboratory equipment; 4.—$20,000 To make much-needed improvements in the campus; 5.—$40,000 To provide part or full tuition for highly desirable pupils from Christian homes; 6.—$75,000 To provide increased endowment sufficient to meet increased maintenance costs." In the brochures, one of which was found among the effects of the decedent, the proposed John F. Carson Memorial Hall was prominently featured. It was depicted in architects' sketches as an imposing, three-story brick structure, with a tower and collonaded portico, standing in the midst of an attractive wooded campus. It was to be the keystone of the improvement and the primary object of the intensive drive for subscriptions.

Several unsuccessful efforts were made by clergymen associated with the school to obtain a subscription from the decedent. One of these, a letter of Rev. John C. Williams, expressed pleasure in his information that she

was "now ready" to make a pledge, and stated that $260,-000 had already been obtained. Actually, no more than $150,000 was ever subscribed. Subsequently, Rev. A. Y. Beatie called personally upon the decedent, and, in the presence of her son, the appellant, renewed these solicitations. The son expressed his dissatisfaction with the manner in which funds already collected had been administered, and suggested that the decedent condition her gift upon the actual construction of the John F. Carson Memorial Hall. It is apparent that decedent was interested chiefly in this memorial to her brother-in-law and there is evidence that she desired her gift to be used for one of administrative offices in the building, as acknowledged by the Headmaster of the school in his letter of thanks.

The subscription of the decedent was in the following form:

"THE JOHN F. CARSON MEMORIAL for
THE STONY BROOK SCHOOL
(The Stony Brook Assembly, Inc.)

"In consideration of my interest in the religious and educational aims of The Stony Brook School and in further consideration of the subscriptions made by others for the same purpose, I promise to pay to THE JOHN F. CARSON MEMORIAL for THE STONY BROOK SCHOOL the sum of *($5000.00) Five Thousand*—dollars, as follows:

.   .   .   .

"C. Initial cash payment of *$2000.00 when construction of the John F. Carson Memorial building is begun and balance at my convenience within 5 years.*

"Name *M. Louise Carson*        Date *June 20, 1930.*
"Address *310 S. 50th St. Philadelphia.*"

The italicized portions of the subscription represent the handwriting of the solicitor, the balance is a printed form.

The drive realized only $95,000 in cash, $30,000 of which was paid to the professional solicitors. With the balance, and with funds thereafter realized on subscriptions the new infirmary was constructed as planned, at a cost in excess of $40,000, the campus was generally improved and scholarships were provided. An old wooden structure on the campus, used for the summer religious assemblies, was completely renovated and converted into a gymnasium for the use of the school. A new foundation was dug, and the building was heavily reinforced with steel girders. Modern lockers and gymnasium equipment were installed and wooden columns were erected on the exterior face. A heating and air-conditioning plant was supplied and the interior walls were insulated to permit year-round occupancy. An inscription was placed over the door: THE JOHN CARSON AUDITORIUM AND GYMNASIUM. The renovation of this building cost more than $25,000.

At the audit, witnesses for the institution stated that this renovated structure satisfied the condition of the decedent's subscription for the construction of "the John F. Carson Memorial building." It was testified that plans for the erection of a separate John F. Carson Memorial Hall were abandoned early in the drive. The old building was found by the architects to be still serviceable and capable of renovation, making unnecessary the building of a costly new edifice for auditorium and gymnasium purposes. The swimming pool was not needed urgently, and the offices, dormitories and laboratories which were to have been included in the new Memorial Hall were placed in existing campus buildings or dispensed with. These witnesses pointed out that funds sufficient to erect the new structure were never obtained and that its principal purposes had been accomplished through the conversion of existing facilities. One of these witnesses went so far as to state that the imposing structure depicted in the brochures was to have been merely the renovated assembly hall with an elab-

orate brick facade. If so, the brochures were, to say the least, entirely misleading. If it was not the purpose of the institution to erect a new Memorial Hall, or if that purpose was abandoned, it does not appear that the subscribers and particularly this decedent, were so advised.

The position of the institution is that it has substantially performed the terms of the decedent's subscription, to the best of its ability, in view of the failure of the drive to raise the necessary total fund. The court below en banc, affirming the award of the decedent's pledge to the institution, suggested that, even if the terms of subscription had not been complied with, the award could be sustained upon the application of the doctrine of *cy pres*.

Appellee asserts that the *validity* of the subscription was *res adjudicata* because of the action of the court upon the first account of the executors in awarding the fund back to them to be retained until the condition of the subscription was fulfilled. Although the matter was not raised at the previous audit, and although there appears to have been some misrepresentation made to the decedent regarding the progress of the drive prior to her subscription, we agree with appellee that the decedent's agreement cannot now be attacked upon the ground of fraud. We do not agree, however, that the previous adjudication "detached this fund from the estate" and "awarded it to the school at Montclaire which now claims it and only postponed the payment until the time when the building shall be sufficiently advanced", as the court below asserted. Judge FRONE-FIELD, who audited the first account stated: "The petition for distribution sets forth an unpaid claim of $5,000.00 due Stony Brook School. This represents a subscription made by decedent during her lifetime of $5,000.00 to The Stony Brook School for the *erection* of an executive office for the School when the contemplated buildings were advanced sufficiently for that

purpose, *in accordance with the plans submitted to the decedent.*

"It is suggested that said sum be retained by the executors and paid to the School *when the terms of the subscription be complied with.* This will be done."

This indicates clearly a recognition by the auditing judge that the terms of the subscription had *not* been complied with, and that they must be complied with *in accordance with the plans submitted to the decedent.* The award did not make the institution the beneficial owner of the fund, *in praesenti,* and defer its enjoyment of the benefits. It left the funds in the hands of the executors until such time as the institution could establish its compliance with the terms of the agreement.

Throughout much of the discussion, appellee and the court below treat the decedent's subscription as if it were an executed gift. It was a *contract.* There is no question at this time that it was a valid contract, and that it was supported by consideration sufficient to contracts of this sort. Under the contract both decedent and appellee had mutual obligations. Appellee was obliged, by the express terms written in the solicitor's handwriting, to begin the *"construction of the John F. Carson Memorial building."* Since the contract does not, itself, explain what this building is, and as the reference is to a specific building, extrinsic evidence was properly admitted to show what the parties intended. This evidence clearly shows that the building contemplated as the "John F. Carson Memorial building", was the *new, three story brick* structure designated in the architects' sketches as "The John F. Carson Memorial Hall". It was in *this* building that decedent was interested, and her subscription was clearly conditioned upon its construction. Had appellee so much as commenced the erection of this building, it would have been entitled, under the terms of the contract to $2,000 immediately, and $3,000 within five years. *It never began the erection of the building.* It could not perform its

part of the contract by repairing an old wooden structure and naming it "The John F. Carson Memorial Hall".

It is no reflection on appellee's good faith that it was not able to perform the contract according to its terms. No doubt it would have done so if the funds could have been obtained. The hard fact is, however, that it did not fulfill the contract. Nor can it be claimed that, equitably, it is entitled to the benefits of the contract upon the doctrine that it has substantially performed its agreement by converting its available resources to the accomplishment of the purpose for which the proposed Memorial Hall was intended. The doctrine of substantial performance has no application where the party obligated to perform *deliberately* and *intentionally* departs from the terms of the contract and attempts to substitute another type of performance. Needless to say, the doctrine of *cy pres* invoked by the court below has no application because there was no *executed* gift to trustees for a charity. The pledge created, at most, an *executory contract.*

Since it is apparent that, at the time of the audit of the second account, appellee had not become entitled to the fund under the conditional subscription, the only question that remains is whether the fund should now be distributed as part of the decedent's residuary estate or whether it should be retained for an additional length of time by the executors, to permit appellee to comply with the condition. The pledge was made by the decedent in 1930. Her death occurred in December, 1931. Since that time twelve years have elapsed. The John F. Carson Memorial Hall is no nearer to construction now than it was thirteen years ago. The present attitude of the appellee is that, unless it receives a fortuitous gift of $300,000, the project will not be undertaken. Such an event seems unlikely, and for all practical purposes the project has been abandoned. Although the decedent's subscription places no time limit upon the

construction of the building, it was obviously not her intention that appellee might delay performance indefinitely. From the optimistic representations made to her by the solicitors and from the literature distributed by appellee she might well have believed that the work upon the Memorial Hall would be instituted shortly after her subscription was made. It is well settled that when no time for performance is expressed in a contract, it will be presumed that a reasonable time was intended. What a reasonable time for performance in the present case would have been we need not conjecture. It is certain that thirteen years from the date of the agreement is an unreasonable lapse of time for performance. Even if this were not so, appellee cannot point to any time in the future at which performance may be expected. The time for performance has clearly expired and the contract has been breached by appellee. The fund should, therefore, be distributed as part of the residuary estate of the decedent at this time.

In view of our conclusion that the findings of fact do not support the decree of the court below, it is unnessary for us to pass upon the question of whether the exceptions to those findings are properly before this Court. The auditing judge expressly found that the John F. Carson Memorial Hall was never erected, and that the present John F. Carson Auditorium and Gymnasium is not substantially like the John F. Carson Memorial building referred to in decedent's subscription. See *McLaughlin v. Lansford Boro. School District*, 335 Pa. 17, 6 A. 2d 291. As the trustee and life tenant were proper parties to this appeal, appellee's objection, under *Hand's Estate*, 288 Pa. 569, 136 A. 864, that the executors were not proper parties, need not be considered, and is conceded by appellee to be immaterial.

The decree of the court below is reversed, the account is confirmed, and the balance for distribution is awarded to The Girard Trust Company, Trustee under the Will of Maria Louise Carson, deceased. Costs to be paid by appellee.