## Devereux's Estate. No. 2

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*Paul Reilly*, for exceptant.

*Maurice A. Hogeland* and *Charles D. Smeltzer*, contra.

BOLGER, J., June 9, 1944.—This opinion applies to the companion trust in the estate of Annie L. Devereux, deceased, April term, 1905, no. 345, with the same force and effect as if filed therein.

The supplemental adjudication disposed of the substantive question of who was entitled to excess income. Exceptions thereto were filed by the trustee and by the Laurel Hill Cemetery Company. The adjudication in dismissing the claim of the Laurel Hill Cemetery Company phrased the award as follows:

"The excess undistributed income is awarded to those of the next of kin who are living and to the personal representatives of those who may be deceased in accordance with the intestate laws of the Commonwealth of Pennsylvania in effect at the date of the death of John L. Devereux, deceased, to the extent that the family lines, the identity of the next of kin, are known, and to the extent that distribution is not possible or next of kin cannot be located after due effort, to be retained by the accountant for further accounting or other appropriate legal proceedings."

The accountant was also directed to file a schedule of distribution. Exceptions were filed and were dismissed and the adjudication confirmed absolutely in an opinion reported in 48 D. & C. 491. Thereafter, upon notice to all parties in interest, the auditing judge held a hearing for the purpose of giving opportunity to additional next of kin to prove their claims in accordance with the reservation in his supplemental adjudication. This hearing was held on October 6, 1943. Additional parties appeared and proved their claims. Mr. Reilly then offered evidence in support of the claim of the Laurel Hill Cemetery Company. He said:

"In making this offer of proof I appreciate what counsel has said about the purpose of this hearing being to have testimony as to who these claimants were who are collateral heirs, but I call your Honor's attention that this is the first time that this matter has been before you that any testimony has been taken or any claims presented which was adverse in fact to the claimed rights of the Laurel Hill Cemetery Company."

Objection to this offer was sustained. The present exceptions are to this ruling of the auditing judge.

Mr. Reilly's comment was incorrect. From the record it appears that at the first audit, November 7, 1940, the auditing judge asked Mr. Reilly if he wanted to be heard on the merits of the case (p. 4). He replied that the cemetery company had no standing unless it were appointed substituted trustee. At the second audit on May 4, 1942, which was held after the guardian and trustee ad litem had partially conducted the search for possible next of kin, the appearance of Mr. Reilly for the Laurel Hill Cemetery Company is noted, the audit was devoted entirely to a discussion of who were the next of kin, and appearances for several of them were entered by Maurice A. Hogeland, Esq., and Charles D. Smeltzer, Esq. No objection was made to these appearances. Furthermore, the report of the guardian ad litem named several definite next of kin and recommended further delay in order to ascertain the existence of other possible relatives. Also on page 6 of the notes of that audit, Mr. Smeltzer pointed out to the court that the testator named many of his next of kin in pecuniary legacies in his will. On July 1, 1942, an adjudication was filed in each estate, presumably after informal settlement or agreement of counsel. This agreement appears to have been nullified by the filing of exceptions. On July 11, 1942, Mr. Reilly, as attorney for the Laurel Hill Cemetery Company, filed exceptions to the notation in the adjudication of his ap-

pearance for the Laurel Hill Cemetery Company "for the reason the said Laurel Hill Cemetery Company did not appear in its own right in anywise, but that the cemetery company appeared only as 'proposed substituted trustee' ".

On November 27, 1942, the exceptions were sustained pro forma upon request of the auditing judge, and the accounts referred back to him for his further attention.

On January 30, 1943, a supplemental adjudication was filed. To this Mr. Reilly filed exceptions on February 15, 1943, as attorney for the Laurel Hill Cemetery Company, proposed substituted trustee, and separate exceptions for the Laurel Hill Cemetery Company generally to the action of the auditing judge in disregarding the unsigned and unauthenticated statement of the Laurel Hill Cemetery Company reflecting certain financial aspects of its operation. Here we have for the first time on February 15, 1943, the first general appearance in the case on behalf of the Laurel Hill Cemetery Company. All of these exceptions were dismissed.

It is true that the exceptant did not appear generally until it filed exceptions to the supplemental adjudication. However, it sat by after receiving notice of the audit, appeared specially, and expressly refused to produce evidence when called upon by the auditing judge in 1940. It possibly relied upon the theory adverted to in the court's opinion that it had no standing because it was merely the agent of the trustee in the care of the cemetery lots, and therefore not a genuine cestui que trust. However, it is bound by its election. The accountant and the court went further than they were required in protecting the rights of the exceptant. The former not only gave full notice to it, but presented the exceptant's case ably and forcefully. Full opportunity was offered, therefore, to exceptant to present its case. There must be finality to all pro-

ceedings. The action of the court en banc in dismissing the exceptions and confirming the adjudication marked the conclusion of the court's disposition of the merits of exceptant's claim.

The hearing of October 6, 1943, did not constitute a reopening of the case. The auditing judge had lost all jurisdiction over the exceptant's claim when the court en banc dismissed exceptions. Therefore, he had no power to reopen the case. The hearing was the "other legal proceedings" referred to in the auditing judge's supplemental adjudication, at which time the identity of the next of kin was to be ascertained so that their shares could be awarded and the amount of them set forth in the schedule of distribution. It is clear to us that the auditing judge's action in making this reservation in the adjudication was proper. We could dismiss these exceptions now by pointing out that no claim of impropriety was made with respect thereto in appropriate exceptions to the supplemental adjudication. However, we will answer this argument on its merits.

This court's practice, being modeled largely upon that of courts of chancery, vests in the auditing judge the widest latitude in the conduct of the audit of an account and in the manner of disposing of the issues presented. In the exercise of the jurisdiction of the orphans' court, its authority is plenary, embracing all the powers of a court of chancery: Wilson, Mayor, v. Board of Directors of City Trusts et al., 324 Pa. 545.

In First National Bank of Pittsburgh v. Baird, 300 Pa. 92, at page 101, the Supreme Court interpreted the Additional Defendants Act of 1929. Since audit proceedings in this court are of a similar composite character, i. e., the trial of several issues in one proceeding, we believe a very close analogy is presented. There the court held that the trial court's power to control procedure is limited only by the constitutional requirement of according full and fair hearing to all parties. It

pointed out the validity of the trial practice under which a trial judge could enter a nonsuit without receiving evidence of this, and then said (p. 102):

"Under it [the Additional Defendants Act], any issue the determination of which will speed the disposition of the whole or any definite part of the controversy, and which can be justly and fairly tried first, without injuriously affecting the other parties to the action, may be thus heard and disposed of before hearing evidence on the other issues."

This practice was approved in Clineff v. Rubash et al., 126 Pa. Superior Ct. 82, and in Maio, Executrix, v. Fahs et al., 339 Pa. 180. In Thompson v. American Steel & Wire Co., 317 Pa. 7, it was decided that general conduct of the trial is within the control of the trial judge and his decision will not be interfered with on appeal save for manifest abuse of power. We find no such abuse in the instant case.

The standard illustration of reserving decision in an adjudication is the practice of directing the filing of a schedule of distribution: Taheny's Estate, 46 D. & C. 306. It was there explained that the schedule of distribution—which is the definitive decree of this court from which appeals lie (Graham's Estate, 294 Pa. 493)—is essential because frequently certain aspects of some cases are not ripe for decision at the time of adjudication and are, therefore, reserved for presentation in the schedule; that the adjudications in uniformly providing for schedules expressly state that such schedules, when filed, become part of the adjudication. This practice has been approved by the Supreme Court in many cases. Another illustration is the practice engaged in for many years without objection, whereby an auditing judge postpones awarding a share to one of several next of kin because his existence is not certain. The adjudication thereupon disposes of claims of creditors and other phases of the

case, but awards the share of the unlocated distributee back to the accountant for further accounting. See also Supreme Court opinion in Carson Estate, 349 Pa. 529.

The offer was actually in the nature of either a motion for a rehearing or for review. If the former, the auditing judge was amply justified in refusing it. We cannot find any abuse of discretion in his action: Cappuccio's Estate, 120 Pa. Superior Ct. 53; Wohleber's Estate, 320 Pa. 83.

Petitions for review must be presented to the court en banc, not to an individual judge. Were we to regard the present exceptions as a petition for review, we would refuse it because it does not come within the requirements for a review: II Hunter's Pennsylvania Orphans' Court Commonplace Book 1154, par. 1(b):

"Petition must show error of law, or new matter, or new evidence.

"A petition for review of an account settled and confirmed in the Orphans' Court must show one of three things: (1) An error of law apparent on the face of the record; (2) new matter which has arisen since the decree; or (3), the subsequent discovery of new evidence which could not have been obtained previously by the use of due diligence: Priestley's Ap., 127 Pa. 420; Nixon's Est., 239 Pa. 270; Rees's Est., 246 Pa. 188; Bickford's Est., 16 Pa. Super. 572." See also Milliken's Estate, 227 Pa. 502.

The exceptant has not brought itself within any of these three provisions. Moreover, exceptant's equivocation in this case bars it from equitable consideration.

The hearing of October 6, 1943, having been fixed for the special purpose of hearing claims of additional heirs at law, in no way prejudices the exceptant. The court has already decided that the cemetery company's claim was without merit and therefore the latter had

no standing to object to anything at that hearing. Therefore, its exceptions are likewise without merit and must be dismissed.

The exceptions are dismissed and the adjudication confirmed absolutely.