COTNER COLLEGE, A CORPORATION, APPELLANT, v. THE ESTATE OF ELMER E. HESTER, DECEASED, APPELLEE.

51 N. W. 2d 612

Filed February 8, 1952. No. 33031.

*Clarence G. Miles* and *Frank B. Morrison,* for appellant.

*Stevens & Scott, Van Pelt, Marti & O'Gara,* and *Hines & Hines,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This action originated as a claim filed by plaintiff in the county court against the estate of Elmer E. Hester, deceased, to recover upon a subscription endowment note. The claim was disallowed. Upon appeal to the district court a jury was waived and the issues were tried to the court. The defense, insofar as important here, was failure of consideration, to which claimant replied that the estate was estopped to make such defense. In its decree the trial court found and adjudged the issues generally in favor of the estate and disallowed the claim.

A motion for new trial was overruled, and plaintiff appealed to this court, assigning substantially: (1) That the trial court erred in its refusal to admit and consider certain evidence; and (2) that the judgment was not sustained by the evidence but contrary thereto and contrary to law. We conclude that the assignments should not be sustained.

Preliminary to discussion of the primary issues, we dispose of the first assignment. On examination by plaintiff of its secretary-treasurer, it was shown that before a new program of religious education was inaugurated by plaintiff in 1946, its board of trustees canvassed its assets and exhibit 13 was identified as a list of its estate and other notes, of which the note here involved was one. The exhibit itself was never offered or received in evidence. In that situation the witness was asked in effect whether or not the note here involved was considered by the board along with all other notes at the time the matter of continuing the college

program was being considered. Objection thereto, as self-serving and calling for a conclusion of the witness, was sustained. In that connection, plaintiff then offered to "show by the witness that among all of the other assets which the college regarded that it owned, this note was considered by the board in connection with deciding whether or not to continue a future educational program." Thereafter a like objection thereto was made and sustained. The witness was then handed exhibit 13 and asked by plaintiff's counsel whether or not it was "in the same condition it was when it was considered by the board" and was permitted to answer "Yes" without objection. Thereafter, with no new question pending, plaintiff offered "to prove that the list represented by Exhibit No. 13 was considered by the Board of Trustees of Cotner College prior to and at the time of determining whether or not to go forward with a further educational program shortly before September, 1946." The objection thereto was renewed and sustained. Plaintiff argued that the trial court erred in so ruling. We conclude otherwise.

The question and offers clearly called for a conclusion of the witness, and the offers were either broader than the question or not responsive to any question to which an objection had been sustained. However, in any event the ruling if erroneous was not prejudicial to plaintiff, since the offer was merely cumulative, not only of evidence given by the witness then testifying, but also by another member of the board of trustees, who was permitted without objection to answer at length comparable questions.

Plaintiff also argued that the trial court erred in refusing to consider or admit exhibit 22, a mimeographed letter dated "June 6, 1947" addressed "Dear Friend" and signed "Cotner College P. R. Stevens (stenciled) P. R. Stevens, Pres." It extended greetings to an unidentified old friend of Cotner College and simply contained information relating to its new program of re-

ligious education, which required no reply. As a witness for plaintiff, Stevens testified that he personally mimeographed the letter and mailed a copy to Elmer E. Hester at Benkelman, Nebraska. Offer of the exhibit was objected to for want of sufficient foundation, and that it was incompetent and immaterial. The objection was sustained. Plaintiff thereafter called the executrix as its own witness to have her identify the exhibit as one having been received by deceased during his lifetime. In that connection her testimony was that she had lived in the Elmer E. Hester home after 1947 and would have seen such a letter because she looked after all his correspondence, kept by him in voluminous files. However, she testified that she had never seen such a letter and although having made a thorough search of Elmer E. Hester's papers, she could not find such a letter. The exhibit was then re-offered, to which the previous objection was renewed, with the addition "It relates to a transaction of a deceased party. Mr. Hester isn't here to admit whether he received that letter."

Concededly, no demand ever had been made by plaintiff for production of the original, and plaintiff's own evidence affirmatively established that no sufficient foundation had been laid for its admission. In any event, however, its exclusion could not have been prejudicially erroneous in the absence of any evidence, as hereinafter observed, which could make estoppel operative to prevent defendant from relying upon the defense of failure of consideration. Viewed in that light, we are not required to discuss or decide whether or not the letter and such evidence as related thereto was a transaction between deceased and a witness having a direct legal interest in the result of the suit within the purview of section 25-1202, R. R. S. 1943.

It is well at this point also to dispose of the issue of estoppel. The doctrine was applied in Ricketts v. Scothorn, 57 Neb. 51, 77 N. W. 365, 73 Am. S. R. 491, 42 L. R. A. 794, an action to recover on a promissory

note, wherein it is said: "An estoppel in pais is defined to be 'a right arising from acts, admissions, or conduct which have induced a change of position in accordance with the real or apparent intention of the party against whom they are alleged.' Mr. Pomeroy has formulated the following definition: 'Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, or contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy.' (2 Pomeroy, Equity Jurisprudence 804.)" In the light of such rules the doctrine of estoppel was applied to permit recovery.

As stated in 31 C. J. S., Estoppel, § 59, p. 236: "Equitable estoppel or estoppel by misrepresentation is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts." Also, as stated in 10 C. J. S., Bills and Notes, § 485, p. 1048: "General principles of estoppel or waiver apply in determining whether the defendant, in an action on a negotiable instrument, is estopped, or has waived his right, to set up a defense thereto." See, also, § 485, p. 1057, where it is stated: "In accordance with general rules considered supra § 485 ·a, in a proper case defendant may be estopped to set up the defense that the

original consideration was illegal, or that there was a want or failure of consideration, * * *."

In Lowe v. Keens, 90 Neb. 565, 133 N. W. 1127, Ann. Cas. 1913B 430, relied upon by plaintiff, the defendant therein was fully cognizant of, participated in, and consented to the change of plans for construction of a church to which he had subscribed. It has no application here.

In that connection, there is no competent evidence in this record that the makers ever performed any act or made any admissions or representations upon which plaintiff could have relied, and under the circumstances they had no duty to speak. There is no competent evidence that the Hesters ever had any knowledge or notice, much less that they acquiesced in what plaintiff did. Further, the obligations or expenditures by plaintiff to establish its new program were not assumed or expended to carry out the purpose for which the subscription was intended. Therefore, the doctrine of estoppel has no application in this case.

We turn then to other contentions. This is a law action. It is well established in this jurisdiction that: "Findings of court in a law action in which a jury is waived have the effect of a verdict of a jury and will not be disturbed unless clearly wrong." Foltz v. Brakhage, 151 Neb. 216, 36 N. W. 2d 768. As stated in such opinion: "The weight of evidence or credibility of witnesses is not a concern of this court in the review of such a case except to determine that the findings and judgment are supported by evidence and are not contrary to law." See, also, In re Estate of Wotke, 133 Neb. 739, 277 N. W. 45.

The note here involved read:

"COTNER COLLEGE ENDOWNMENT NOTE.
"$25,000.00           Benkelman Nebr. Dec 31st 1921.
"In consideration of our interest in Christian Education and for the purpose of producing an Endowment for Cotner College and for value received, we hereby

subscribe and promise to pay to Cotner College, Bethany, Nebraska, the sum of _____ Twenty five thousand Dollars, due and payable at the death or before at the option of the makers with interest at the rate of one per cent per annum, beginning January 1st 1924.

"This Endowment Note is made subject to the following conditions;

"FIRST, when the principal sum of this note shall have been paid in full or any part the makers, at their option may ask and demand of Cotner College, Annuity Bonds bearing interest at the rate of Five per cent per annum.—

"SECOND, At the option of the makers of this note sufficient of the annuity privilege may be surrendered to constitute two full scholarships in perpetuity to graduates of accredited High Schools who shall live in that part of Nebraska, lying west of the One Hundred first principal Meridian, and the Scholarships shall be known as the, _____ Elmer E. and Minnie B. Hester Scholarships. The beneficiaries of these scholarships shall be needy students and selected by the President of Cotner College, the Head of Sacred Literature Department and the President of the Volunteer Band.

(Signed) ELMER E. HESTER

MINNIE B. HESTER

Witness

A. D. HARMON

M. F. HIGGINS"

Its execution is admitted. It is conceded also that on January 24, 1925, the makers paid $250 interest thereon, and that Minnie B. Hester died May 18, 1943, and Elmer E. Hester died September 18, 1949.

The trial court specifically found and adjudged in its decree: "Upon consideration of the files, the evidence, and the arguments of counsel, the court, being fully advised in the premises, finds generally in favor of the objectors and against the claimant, Cotner College, and that the allegations of the objections or answer of the

objectors are true. The court further finds that at the time Elmer E. Hester and Minnie B. Hester executed the note involved herein Cotner College, a legal corporation, maintained its educational institution at Bethany, Nebraska; that it offered several courses of study as an Arts and Religious School of Instruction; that it had approximately 350 students; that it maintained a Boys Dormitory and a Girls Dormitory in connection with its college; that during the latter part of the nineteen-twenties Cotner College became involved in indebtedness; that by reason of such indebtedness and of the general financial condition of the country, and of its supporting constituents, it was forced to suspend its educational program and close its college in the spring of 1933; that at said time in 1933 all educational activities of said college ceased at Bethany, Nebraska, and have never been revived; that the attempted renewal of educational facilities in 1946 by Cotner College near the campus of the University of Nebraska and of the College of Agriculture is not a renewal of its former educational program and is not the type of education formerly provided at Bethany. The court further finds that by reason of the failure of the claimant to maintain and continue its educational program and by reason of the suspension and abandonment of its educational facilities of Cotner College at Bethany, Nebraska, the consideration for the note involved herein wholly failed, and the estate of Elmer E. Hester is not liable thereon.

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED by the court that the claim of Cotner College be and the same hereby is disallowed, and the costs of this action are taxed to the claimant."

In that connection, an examination of the record discloses ample competent evidence supporting such findings and judgment. Therefore, unless the decree was contrary to law, it will be sustained. We conclude that it was not contrary to law.

In that connection, there was concededly a consider-

ation for the note when it was executed. The question here is whether or not the consideration subsequently failed, since consideration for the promise is tested by the situation existing at the time it is sought to enforce the subscription. 50 Am. Jur., Subscriptions, § 9, p. 783. See, also, Continental Co. v. Eilers, 134 Neb. 278, 278 N. W. 497.

"It is an implied condition of a subscription that the money shall not be diverted from the purpose for which it was subscribed and the enterprise shall not be abandoned." 50 Am. Jur., Subscriptions, § 19, p. 791. As stated in § 25, p. 794: "Also, in the absence of any stipulations upon the subject in terms of the subscription, the abandonment of a charitable enterprise releases the subscriber to its fund; the law implies that the enterprise must be existing when payment is demanded." As stated in § 23, p. 793: "The general principles governing the performance of contracts apply to subscriptions. If a material change in the plan or purpose for which a subscription was made is effected without the consent of the subscriber, he is excused from performing his promise, unless there has been a waiver, or unless he has estopped himself to deny his consent to the change."

In 12 Am. Jur., Contracts, § 359, p. 925, it is said: "A fortiori, where there is a total failure of consideration and the defendant has derived no benefit from the contract or none beyond the amount of money which he has already advanced, such total failure of consideration may be shown in bar of the action.

"Where one party has disabled himself from performing, the other party is not obligated to perform." Also, as stated in the same section on p. 926: "It does not follow that because a technical rescission has not been made, and cannot be made, that a defendant cannot avail himself of the defense of failure or want of consideration." As stated in § 360, p. 927: "A failure of consideration of such a degree that the remaining con-

sideration may be deemed to be no substantial consideration is an excuse for nonperformance of a promise." See, also, 7 Am. Jur., Bills and Notes, § 252, p. 949.

The foregoing propositions of law are stated in another manner in 17 C. J. S., Contracts, § 129, p. 476, wherein it is said: "Although, strictly speaking, it has been said there can be no such thing as failure of consideration, many cases have laid down the rule that when the consideration for a promise wholly fails the promise is unenforceable, and it has been stated that the doctrine of failure of consideration is predicated on the happening of events materially changing the rights of the parties, which events were not within their contemplation when the contract was executed." See, also, 10 C. J. S., Bills and Notes, § 518, p. 1142.

In Restatement, Contracts, c. 10, § 274, p. 399, it is said: "(1) In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional." In the Pocket Supplement of Nebraska Annotations to § 274, it is said: "This statement is in accord with the Nebraska law." Thereafter, Nebraska cases too numerous to cite herein are listed as supporting the statement.

Also, as stated in Restatement, Contracts, § 281, p. 415: "In promises for an agreed exchange, a promisor is discharged from the duty of performing his promise if substantial performance of the return promise is impossible because of the non-existence, destruction or impairment of the requisite subject-matter or means of performance, provided that the promisor has not himself wrongfully caused the impossibility or has not assumed the duty that the subject-matter or means of performance shall exist unimpaired." The afore-cited annotation also cites numerous Nebraska cases supporting that statement.

In In re Estate of Griswold, 113 Neb. 256, 202 N. W.

609, 38 A. L. R. 858, relied upon by plaintiff, the primary question was whether or not a comparable endowment subscription note was based upon a valuable consideration. Therein it was concluded that assumption by the payee of obligations express or implied to carry out the purposes for which the note was given and intended was a sufficient consideration. There was no question of subsequent failure of consideration. In fact, the payee therein fully performed all its obligations at all times. This court so concluded in the opinion, which affirmed a judgment for plaintiff. The case is not controlling here as precedent for plaintiff. Rather, there are statements in such opinion supporting the position of defendant.

Carson Estate, 349 Pa. 529, 37 A. 2d 488, involved a comparable subscription note and subsequent failure of consideration. In that opinion it is said: "It was a contract. There is no question at this time that it was a valid contract, and that it was supported by consideration sufficient to contracts of this sort. Under the contract both decedent and appellee had mutual obligations. Appellee was obliged, by the express terms written in the solicitor's handwriting, to begin the 'construction of the John F. Carson Memorial building.' * * * It is no reflection on appellee's good faith that it was not able to perform the contract according to its terms. No doubt it would have done so if the funds could have been obtained. The hard fact is, however, that it did not fulfill the contract. Nor can it be claimed that, equitably, it is entitled to the benefits of the contract upon the doctrine that it has substantially performed its agreement by converting its available resources to the accomplishment of the purpose for which the proposed Memorial Hall was intended. The doctrine of substantial performance has no application where the party obligated to perform deliberately and intentionally departs from the terms of the contract and attempts to substitute another type of performance." See, also, Turknett v. Western College of New Mexico

Conference of the Methodist Episcopal Church, 19 N. M. 572, 145 P. 138.

In Simpson Centenary College v. Tuttle, 71 Iowa 596, 33 N. W. 74, the defense was failure of consideration. The subscription note was a donation to the endowment fund, the interest of which was to be used to maintain an academic college, then at Indianola, Iowa. However, payee used such funds to establish a law school in Des Moines, Iowa, 20 miles from Indianola. In that opinion it is said: "The note sued upon is still in the hands of the payee; and, notwithstanding the use of the words 'value received,' the question of consideration is still open. * * * The obligations and expenditures on the part of the donee which might prevent the interposition of the defense of want of consideration must be directly in the line of the purpose for which the gift of the note or promise to give was intended. A diversion of the funds to other purposes, contrary to the intent of the donor, would certainly be a good excuse for withholding the consummation of the gift; and, if the plaintiff is diverting the funds created by the donations to purposes not contemplated at the time of the gift, but in violation of the agreement on which the promise was based, in such a manner as to show want of good faith on the part of the donee, the proof of such diversion is a defense to the note in the nature of a failure of consideration." In the case at bar, an academic college conducting a general program of Christian education and fully equipped therefor with lands, buildings, and faculty, was located at Bethany, a suburb of Lincoln, when the note was executed. That property was lost, its faculty discharged, and its program completely abandoned from 1933 to 1946 when a new and completely different program, insignificant in comparison and described as "distinctly a school of religion," was established in minor quarters in a different atmosphere amidst metropolitan surroundings in Lincoln, four miles away. The afore-cited case is singularly comparable with that at bar.

Rutherford College, Inc. v. Payne, 209 N. C. 792, 184 S. E. 827, involved the right to recover upon a subscription note, comparable with that at bar. It was tried to a jury wherein a verdict was directed and judgment entered thereon for plaintiff. Upon appeal, the court reversed the judgment and awarded a new trial substantially upon the premise that defendant would not be liable on the note if the jury found that subsequent to its execution the college became insolvent and unable to use its endowment fund because it had discontinued the same as a school operated by it for the promotion of Christian education. In material respects that case is comparable with the one at bar.

As stated in Commercial Travelers' Home Assn. v. McNamara, 95 App. Div. 1, 88 N. Y. S. 443: "The law is not so absurd as to hold one to his subscription or promise to give to a charitable or public enterprise after the enterprise has been abandoned. If no condition be attached, the law will imply that the enterprise must be existing when payment is demanded." See, also, Indianapolis Bible Institute v. Kiddey, 98 Ind. App. 567, 187 N. E. 846, and the Annotation, Abandonment of Enterprise, 48 L. R. A. N. S. 811, with cases cited.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.