Herbert RHODES

v.

SUPERIOR INVESTIGATIVE SERVICES, INC., Albert Schwartz and Evelyn Schwartz.

No. 76–2065.

United States District Court, E. D. Pennsylvania.

Sept. 28, 1977.

Yale Bernstein, Bashman, Bernstein & Wolf, Philadelphia, Pa., for plaintiff.

Ross Van Denbergh, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff, Herbert Rhodes, a citizen of New Jersey, brought this diversity action seeking judgment in the amount of $30,000, the balance allegedly due on a contract pursuant to which he sold his stock in a security guard business to the defendant, Superior Investigative Service, Inc. ("SIS"), a closely held Pennsylvania corporation with its principal place of business in Pennsylvania. Defendants, Albert and Evelyn Schwartz, citizens of Pennsylvania, were joined on the ground that they had guaranteed payment of the $30,000. The defendants claim that since the plaintiff has breached the contract by engaging in a competing security guard business, contrary to a covenant not to compete, they are not obligated to pay the $30,000. The case was tried before the Court, sitting without a jury, and for the reasons hereinafter set forth the Court will enter judgment for the defendants.

Plaintiff was a minority shareholder, president, and later chairman of the board of SIS from its incorporation in 1969. On May 13, 1974, he terminated his employment with SIS by entering into a written agreement wherein SIS agreed to pay him the sum of $80,000 for his stock. He was paid $50,000 on that date and SIS agreed to pay him the balance of $30,000 two years later. The contract contained the following covenant:

6. *Covenant by Seller not to Solicit Buyer's Customers.* Seller covenants and agrees that for a period of two (2) years from the date of this Agreement, he will not, within . . . a radius of fifty (50) miles . . . of City Hall, Philadelphia, Pennsylvania; directly or indirectly as a corporation or as an individual, nor will any business entity or corporation of which he is an owner, shareholder, officer, employee, representative, or otherwise, either directly or indirectly, own manage, operate, control or participate in the ownership, management, operation of or control of or be connected in any manner with or assist others in the security guard business.[1]

The contract also provided:

7. *Right of Set-Off and Injunction.* Should Seller violate any of the provisions of this Agreement . . . then Buyer shall have the right to set-off the sums due to Seller hereunder.

The contract was accompanied by a document entitled "GUARANTY" wherein defendants, Albert and Evelyn Schwartz, jointly and severally guaranteed the $30,000 payment.

Plaintiff, who was his sole witness at trial, testified that after terminating his employment with SIS, he organized and became associated with Rhodes Investigative Services, Inc. ("RIS"), a Pennsylvania corporation which engaged solely in investigative work. He admitted that he was present at the time Hahn Security Service,

Inc. ("HSS"), was organized as a Pennsylvania corporation, for the purpose of engaging in the security guard business. He also admitted that both corporations had their offices at 3800 Castor Avenue in Philadelphia, where they shared a common entrance, and that he had obtained the office space and the furniture used by the two corporations on a rent-free basis. Plaintiff admits that HSS engaged in the security guard business within the 50 mile radius described in the non-competition covenant of the contract.

Plaintiff admitted that he entered into an agreement with Frank Hahn and Michael J. McAllister, dated December 26, 1974, which provided in pertinent part:

*Whereas* these parties have engaged in the business of Security Guard Service and Investigative Service and related services under the corporate names of Hahn Security Service and Rhodes Investigative Services . . . .

Therefore the parties have agreed to execute this agreement in order to clarify between themselves the respective interest of each parties [sic] in the aforementioned corporations.

That the capitalization of the corporations shall be by loans of a personal nature in the amount of $4,000.00 by each of parties and stock purchase of 1000 shares by each party at par value

. . . . .

That because of the varied talents and on account of the projected participation of the parties the proprietary interest after the two year period from the date of incorporation shall be as follows:

That Mr. Herb Rhodes shall own 55% of the aforementioned corporations,

That Mr. Frank Hahn shall own 35% of the aforementioned corporations,

That Mr. Michael J. McAllister shall own 10% of the aforementioned corporations . . . .

---

1. The contract further provided:

This provision in no way shall limit Seller's right to serve as internal security director for any company, provided such Company does not provide security services for any Company, firm, or business other than itself or its subsidiaries; nor as a private detective performing investigations.

Plaintiff also acknowledged that he and McAllister entered into an agreement to sell 188 shares of stock in HSS to Thomas and Margaret Grady. This agreement, dated November 25, 1975, provided in part:

WHEREAS, Sellers are the registered owners of 750 shares of Common Stock of Company; and

WHEREAS, Purchasers desire to purchase from Sellers 188 shares of Common Stock . . . . .

2. Sellers hereby recognize that Thomas Grady has contributed valuable and unique service to Company and in consideration of continued valuable and unique services hereby transfer, sell, assign and/or release unto Purchaser 188 shares of Common Stock in Company now owned and held by Sellers so that as of November 25th, 1975, the effective date of this Agreement the respective shareholders interest for each party to this agreement is:

| | |
|---|---|
| Thomas Grady | 188 Shares Common Stock |
| Michael McAllister | 180 Shares Common Stock |
| Herbert Rhodes | 382 Shares Common Stock |

The plaintiff concluded his testimony by denying that he had any financial interest in or that he had participated in the security guard business in violation of the covenant contained in the contract of May 13, 1974.

Frank W. Hahn, the president of HSS, Michael J. McAllister, an investor in HSS, and Thomas Grady, who ultimately purchased all the stock of HSS from the plaintiff and McAllister, testified for the defendants. Their testimony convinces the Court by a preponderance of the evidence that the plaintiff had breached the May 13, 1974 contract by "directly and indirectly owning, managing, operating, controlling and participating" in the security guard business within a 50 mile radius of Philadelphia, during the two year period after May 13, 1974.

Michael McAllister testified that in 1974 he met with Hahn and the plaintiff who told him that he was interested in going back into the security guard business and that the three of them agreed to set up two corporations—one to engage in investigative work and the other to engage in the security guard business. McAllister testified further that he, Hahn and the plaintiff entered into the agreement dated December 26, 1974 and that it correctly reflected the fact that plaintiff owned 55% of the stock of each corporation, that Frank Hahn owned 35% of the stock of each corporation and that he, McAllister, owned 10% of the stock of each corporation. McAllister also testified that he had observed the plaintiff actively participating as a principal in the security guard business with HSS. He recalled that the plaintiff had told him that he had signed a "restrictive covenant", and would receive $30,000 if he did not engage in the security guard business for two years. McAllister concluded by pointing out that after HSS had financial reverses Thomas Grady paid the plaintiff $1,000 for his stock in HSS.

Frank W. Hahn testified that he had known plaintiff for a number of years prior to 1974 and that plaintiff had suggested to him that they become associated in a security guard business. He said that the plaintiff introduced him to McAllister and that the three of them formed two corporations—HSS and RIS. He acknowledged that the December 26, 1974 agreement correctly set forth the respective interests of the three in the two corporations. Hahn went on to explain that he had no prior experience in the security guard business and that it was understood that the plaintiff would actively participate in the security guard business by devoting his time and expertise to the operation of HSS. He further testified that the plaintiff prepared bids for submission to prospective customers; determined the rates to be charged by HSS; accompanied Hahn to Temple University where they endeavored to obtain the security guard contract; and obtained a contract for security guard services with a former client of SIS. According to Hahn, when performing services for HSS plaintiff

used the name "Bennett", and it was understood between them that the plaintiff could not be publicly identified with the security guard business because of his contract previously entered into with the defendants.

Thomas J. Grady, the last of the defendants' witnesses, testified that the plaintiff contacted him and asked him to become a stockholder in HSS, and at plaintiff's urging he purchased stock in the corporation. Grady stated that he became the sole stockholder of HSS when, at a later date, he purchased all the remaining stock of the plaintiff and McAllister by paying each of them $1,000. He further testified that prior to his becoming the sole owner of HSS, plaintiff actively participated as a principal in the running of HSS using the name "Bennett". Grady explained that it was his understanding that the plaintiff would not use his correct name because of the covenant with SIS.

Plaintiff contends that he did not directly or indirectly breach his contract with SIS and is therefore entitled to the full $30,000. It is the finding of this Court that the plaintiff willfully and deliberately violated the covenant not to compete contained in the May 13, 1974 contract in that he did within a period of two years from the date of the contract, within a 50 mile radius of Philadelphia, both directly and indirectly own, manage, operate, control and participate in the security guard business. Plaintiff participated as a principal in all phases of HSS, including the ownership of a substantial stock interest in the company. Furthermore, he attempted to do this under a cloak of secrecy which he donned to prevent the defendants from becoming aware of his competing activities.

 Plaintiff contends that in the event that the Court finds that he violated the covenant not to compete, he is nevertheless entitled to receive the $30,000. The plaintiff argues that he substantially performed his obligations under the contract, and since the defendants offered no proof that damage resulted from the plaintiff's actions, he is entitled to the $30,000. Plaintiff also argues that the defendants' interpretation of the contract amounts to a forfeiture, a result disfavored under Pennsylvania law, the law which all parties agree should be applied in this diversity action.[2]

Plaintiff relies upon the doctrine of substantial performance. As the Pennsylvania Supreme Court stated in *Morgan v. Gamble*, 230 Pa. 165, 79 A. 410, 414 (1911):

> The equitable doctrine of substantial performance is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right to compensation may not be forfeited by reason of mere technical, inadvertent, or unimportant omissions or defects.[3]

 In the instant case, the plaintiff did not faithfully and honestly endeavor to perform his obligations under the contract. Rather, he used deception to camouflage his breach; it was not a technical or unimportant breach. Where the plaintiff's breach is intentional, the equitable doctrine of substantial performance has no applicability. As the court stated in *Williard Sales & Service, Inc. v. Stevens*, 167 Pa.Super. 621, 76 A.2d 225, 227 (1950),

---

**2.** A court in diversity cases applies the conflicts of law principles of the state in which it sits. *Klaxon Co. v. Stentor Elevator Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In conflict situations, Pennsylvania applies the law of the place that has the most significant relationship to the parties. *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796, 805–6 (1964); *Neville Chemical Co. v. Union Carbide Corporation*, 422 F.2d 1205, 1211 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). In contract actions, controlling factors to a court's determination of applicable law are where the contract was made and where the contract was to be performed. *Craftmark Homes, Inc. v. Nanticoke Construction Company*, 526 F.2d 790, 792, n. 2 (3d Cir. 1975). In the instant case, the contract was made in Pennsylvania and was to be performed primarily in Pennsylvania; thus the Court agrees with the parties that Pennsylvania law controls.

**3.** *Quoting Gillespie Tool Co. v. Wilson*, 123 Pa. 19, 26, 16 A. 36, 37–8..

it is incumbent upon him who invokes this protection [of the doctrine of substantial performance] . . . to present a case in which there is no wilful omission or departure from the terms of the contract. If the plaintiff . . . fails so to do, the question of substantial ·performance is not to be submitted to the [trier of fact].

*See also, In re Carson's Estate,* 349 Pa. 529, 536, 37 A.2d 488, 491–2 (1944). This Court having found that the plaintiff's breach of the covenant was willful and intentional, the plaintiff is not entitled to invoke the doctrine of substantial performance. Furthermore, we find that the plaintiff did not substantially perform his obligations under the contract.

 Plaintiff further argues that a judgment for the defendants in this case would amount to a forfeiture. In this connection, plaintiff relies on those cases which stand for the principle that "[a] contract must be given an interpretation, where possible, which does not lead to a forfeiture, which in and of itself is 'abhorrent to the law and which, unless expressed with clearness * * * will never be enforced.'" *Sgarlat v. Griffith,* 349 Pa. 42, 45, 36 A.2d 330, 333 (1944) (*quoting Baldwin v. American Motor Sales Co.,* 309 Pa. 275, 163 A. 507, 509 (1932)). *See also, Blue Ridge Metal Manufacturing Co. v. Proctor,* 327 Pa. 424, 194 A. 559, 561 (1937); *Corrigan v. Home Life Insurance Co. of America,* 120 Pa.Super. 476, 183 A. 125, 126 (1936); *Grayboyes v. Kapner,* 116 Pa.Super. 44, 176 A. 40 (1935).

While under Pennsylvania law, a court will strive where possible to interpret a contract to avoid a forfeiture, when the parties to the contract have expressly provided therein what the effect of a default shall be, a court is not free to rewrite the contract. *Fredericks v. Georgia-Pacific Corp.,* 331 F.Supp. 422, 427 (E.D.Pa.1971), *appeal dismissed,* 474 F.2d 1338 (3d Cir. 1972).

The contract in this case provided that the plaintiff would not compete for a period of 2 years. At the time the plaintiff executed the contract, he received $50,000 of the $80,000 consideration. The contract provided that he was to receive the $30,000 balance at the expiration of the 2 year period. During this 2 year period, plaintiff's only obligation under the contract was his covenant not to compete. The contract provided that in the event that the contract was violated, the defendants would have the right to set-off the sums due to the plaintiff. This Court finds that the intent of the parties was clear; that in the event the plaintiff violated the covenant, the defendants would have the right to retain the $30,000. Furthermore, plaintiff's elaborate plan to conceal his competitive activities, and his discussions with McAllister, Hahn and Grady, demonstrate that he was well aware that he was not entitled to the $30,-000 in the event he engaged in the security guard business within the two year period.

This memorandum is in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Accordingly, the attached Order is entered:

### ORDER

AND NOW, this 28th day of September, 1977, it is hereby ORDERED that judgment is entered in favor of defendants, Superior Investigative Services, Inc., Albert Schwartz and Evelyn Schwartz, and against the plaintiff, Herbert Rhodes.